UNITED STATES of America, Plaintiff,

v.

PRIVATE SANITATION INDUSTRY AS-
SOCIATION OF NASSAU/SUFFOLK
INC., et al., Defendants.

No. CV–89–1848.

United States District Court,
E.D. New York.

Feb. 9, 1996.

Christopher Lehmann, Assistant U.S. Attorney, Brooklyn, New York, for plaintiff.

Paul Battista, New York City, for Defendants Unique and U–Need–A–Roll–Off.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

*The Motion for Summary Judgment is Granted.*

The standards to be observed in determining whether a motion for summary judgment should or should not be granted have been so frequently stated in treatise, law review and judicial literature, that even a cursory attempt to review it would be as foolhardy as it would be superfluous. It will suffice to give recognition to the fairly recent trilogy of United States Supreme Court cases on that subject.

*E.g.*, In *Celotex Corp. v. Catrett,* 477 U.S. 317, at 327, 106 S.Ct. 2548, at 2555, 91 L.Ed.2d 265 (1986), the Court wrote that:

Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action. . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rules prior to trial, that the claims and defenses have no factual basis.

In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574 at 586–87, 106 S.Ct. 1348 at 1355–56, 89 L.Ed.2d 538 (1986), the Court wrote:

When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule,

the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" ... Where the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

And finally in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court again emphasized the absence of a genuine issue of material fact and wrote that *"if the evidence is merely colorable* ... or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

With those principles in mind, the Court is driven to conclude that summary judgment must be granted against *Unique Sanitation* and *U–Need–A–Roll Off Corp.*

In a Memorandum and Order dated October 13, 1994 this court granted summary judgment against Nicholas Ferrante after finding that there were no genuine issues of material fact which precluded a determination that he violated the *RICO* statute in exercising control over the Long Island Carting Industry. The order issued enjoined him from participating in the carting industry and commercially associating with members of organized crime or with other defendants in the case; to divest his interests in Unique Sanitation and U–Need–A–Roll Off; and to disgorge the proceeds derived from his unlawful conduct with a court administered fund. Familiarity with that Memorandum and Order is presumed. Nicholas Ferrante moved the Court of Appeals for a stay of that order pending appeal and for an expedited appeal. The Court granted his motion for an expedited appeal but denied a stay. *U.S. v. PSIA,* 44 F.3d 1082 (1995). Thereafter, on January 23, 1995, the Court affirmed this court's decision of October 13, 1994 in a summary order. *U.S. v. PSIA,* 47 F.3d 1158 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 50, 133 L.Ed.2d 15 (1995).

This motion is predicated upon the same facts and resisted upon the same grounds and therefore need not detain us long. That is to say, the requisite predicate racketeering acts were found to have been established as

were the "pattern" and "participation" elements necessary to establish RICO liability. The only issue presented for resolution now is whether there is any genuine issue of material fact that would preclude granting summary judgment against the corporations, *Unique Sanitation Corp.* and *U–Need–A–Roll Off Corp.*

On October 17, 1986 Unique Sanitation and Nicholas Ferrante pleaded guilty to Count II of an Indictment numbered 2626.83 in the County Court of the State of New York for Suffolk County which charged them with compelling and inducing another person to adhere to an illegal contract, agreement, combination and conspiracy in restraint of competition which that person had a legal right to abstain from engaging in and to abstain from competitive bidding for and solicitation of carting contracts in which that person had a legal right to engage, by instilling in that person a fear that if the demands were not complied with the defendants or others would cause physical injury to that person or others and damage to property, including damage to the person's carting business, the carting company's place of business, its containers, trucks and other equipment or its customers' businesses or places of business—in violation of Penal Law § 135.65(1)—Coercion in the First Degree.

Ferrante pleaded guilty to coercion in the first degree, a Class D felony, and Unique pleaded guilty to attempted coercion in the second degree, a Class B misdemeanor.

In his plea allocution, Ferrante admitted that between December 1981 and October 1983 he intentionally and knowingly induced Robert and Jerome Kubecka to refrain from bidding for and soliciting carting customers by instilling in them a fear that he would damage their property.

In the Memorandum and Order of October 13, 1994, the court decided that the allocution established a Hobbs Act violation and was affirmed by the Court of Appeals in that determination. The corporation's allocution was the same as Ferrante's and although the corporation pleaded guilty to a misdemeanor, the element of the two crimes are precisely the same and the facts to which the corporation allocuted is what gives rise to a Hobbs

Act violation and the technical appellation of the crime to which it pleaded as a misdemeanor is immaterial. It is the facts to which it allocuted which bespeaks the Hobbs Act violation.

The defendant's contention that the state court judgment should not be given collateral estoppel effect has been foreclosed by the affirmance of the October 13, 1994 order as well as by the previous decisions in *U.S. v. PSIA,* 811 F.Supp. 808, 813–14 (E.D.N.Y. 1992), *aff'd,* 995 F.2d 375 (2d Cir.1993) (PSIA II). The first RICO predicate act is thus established as against Unique.

The additional predicate acts are also established against Unique and U–Need–A–Roll Off Corp. by the repeated commission by Ferrante of the state crime of second degree bribery which is punishable by more than one year's imprisonment and thus is a RICO predicate. The finding of the commission of this crime by Ferrante was held to be established in the court's Memorandum and Order of October 13, 1994, a determination which was also affirmed by the Court of Appeals. That finding also establishes the additional predicate racketeering acts against Unique and U–Need–A–Roll Off Corp. by virtue of §§ 10.00(7), 20.20(1)(a) and 20.20(2)(b) of the N.Y. Penal Law. *See United States v. Kaplan,* 886 F.2d 536 (2d Cir. 1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990) (separate and distinct acts of bribery may constitute the predicate acts in satisfaction of the "pattern" requirement of 18 U.S.C. § 1962(c)); *United States v. Private Sanitation Industry Association* (PSIA I), 793 F.Supp. 1114 (E.D.N.Y. 1992).

Section 10.00(7) defines "person" as including private corporations, and

Section 20.20(2)(b) addressing the criminal liability of corporations provides that a corporation is guilty of an offense when the conduct constituting the offense is engaged in by the board of directors or by a high managerial agent acting within the scope of his employment and on behalf of the corporation.

Section 20.20(1)(a) defines "Agent" to mean any director, officer or employee of a

corporation, or any other person authorized to act in behalf of the corporation.

The defendant corporations do not dispute that "Mr. Ferrante owned both corporations and was their president during the relevant period." (Def.'s Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, 23). They argue, however, that notwithstanding those facts, it doesn't follow that the corporations committed bribery. Acknowledging the provisions of the New York Penal Law referenced above, they nevertheless question whether the bribery payments made by Ferrante to the employees of the Oyster Bay dump should be attributed to the corporations under the doctrine of *respondeat superior* or any other doctrine and thus establishing the existence of additional predicate racketeering acts supporting a finding of a violation of the RICO statutes. That question, they contend, raises a genuine issue of material fact which precludes granting the plaintiff's motion. The questions posed are illusory as even the most cursory reading of the declarations of Joseph R. Vittorio, Jerome J. Kowalski and Peter Straniello reveal. *See* exhibits P, Q and R to plaintiff's 3(g) statement. The affirmation of Nicholas Ferrante interposed as raising an issue of fact will be subsequently discussed. The affirmation of Joseph Ferrante is, for the most part, a replication of his submission in opposition to the government's motion for summary judgment against his father which, the court concluded in the Memorandum and Order of October 13, 1994, did not raise any genuine issue of material fact. The affirmation of Daniel Turchin, the accountant for the defendant corporations, also interposed in opposition to the government's motion, raises no genuine issue of material fact which would defeat this motion. His assertion that the corporations paid all the dumping fee bills submitted by the Town of Oyster Bay is not a refutation of the fact that those bills did not accurately represent the fees for the waste accurately dumped by the corporations' trucks as the declarations of the scalehouse employees irrefutably demonstrate.

In the declaration of Joseph Vittorio, under penalty of perjury, he stated that the scalehouse employees of the Town of Oyster Bay (with one possible exception) regularly underweighed or under-recorded refuse dumped by Unique and U–Need–A–Roll Off trucks in exchange for bribes, many of which were paid to him personally by Nicholas Ferrante. Jerome Kowalski and Peter Straniello, corroborated Vittorio's sworn statement. The suggestion that Nicholas Ferrante was not acting on behalf of the corporations can only be regarded as frivolous.

The conclusion that the necessary predicate racketeering acts have been established as against the corporations is inescapable. That conclusion, together with the conclusions reached in the Memorandum and Order of October 13, 1994 as regards the other RICO elements which were affirmed on appeal, drives this court to grant the plaintiff's motion for summary judgment.

Before passing to the specific relief requested by the government, it is appropriate to address the cross-motions of the defendants.

### I. *The Disqualification Motion*

The defendants have moved for my disqualification pursuant to the following statutes:

28 U.S.C. § 455(a):

Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(b)(1):

He shall also disqualify himself ... where he has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding;

The defendants place principal reliance upon prior decisions rendered over the years during which this litigation has been before me and upon statements made by me during an ancillary proceeding to the effect that organized crime was involved in the carting industry on Long Island. The defendants also rely upon *Liteky v. United States,* —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

The reliance upon prior decisions of this court is premised upon the remarkable as-

sumption that if those decisions were adverse to the defendants the court must be partial to the plaintiff. The prior decisions in this complex litigation have affected numerous individuals and corporate defendants and not until now has it ever been suggested that this court was not impartial. Prior rulings adverse to other defendants in this litigation were reviewed and affirmed by the Court of Appeals on three occasions. *See United States v. PSIA, et al.,* 47 F.3d 1158 (2d Cir.1995); 44 F.3d 1082 (2d Cir.1995); 995 F.2d 375 (2d Cir.1993). The government in its memorandum in opposition also notes that when deemed to be appropriate, the court was critical of the government (Gov't Memo at 6 and 7 n. 1) and made determinations favorable to the defendants in 793 F.Supp. 1114 (E.D.N.Y.1992) and 862 F.Supp. 861 (E.D.N.Y.1994). Reliance upon this ground is totally devoid of merit.

The observation of this court that the carting industry on Long Island was heavily infiltrated by organized crime is factually correct and unassailable. *See* 793 F.Supp. 1114 (E.D.N.Y.1992); *United States v. PSIA,* 811 F.Supp. 808 (E.D.N.Y.1992), *aff'd,* 995 F.2d 375 (2d Cir.1993); the Memorandum and Order dated October 13, 1994 which was affirmed in 47 F.3d 1158 (2d Cir.1995); the testimony of Alphonse D'Arco and Peter Chiodo in *United States v. Vittorio Amuso,* CR–90–446(S–1) related in affirmation of Donald W. McCormick, Ex. N to plaintiff's 3(g) statement.

The reliance upon *Liteky* is similarly misplaced. The Court there decided, —— U.S. at p. ——, 114 S.Ct. at p. 1157:

First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion.... In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extra-judicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extra-judicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of

the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

The defendants do not claim, nor can they, that the court has been adversely inclined toward them by virtue of some extra-judicial source, nor do they claim, nor can they, that the court has displayed some deep-seated favoritism or antagonism toward them that would make it impossible to judge them fairly. Their motion for disqualification is denied.

## II. *Withdrawal of the October 13, 1994 Order*

█ The defendants move this court to withdraw its October 13, 1994 order which rested, in part, upon adverse inferences drawn from the invocation by Nicholas Ferrante of his Fifth Amendment privilege against self-incrimination during pretrial discovery. Mr. Ferrante now wishes to testify and requests the court to consider his submission made in an affirmation annexed to this cross-motion. Reliance for this motion is placed upon *United States v. Certain Real Property, etc.,* 55 F.3d 78 (2d Cir.1995).

Rather than support Mr. Ferrante's motion to have his testimony considered by this court, *United States v. Certain Real Property* confirms that Mr. Ferrante's application to testify on matters regarding which he previously invoked his Fifth Amendment privilege should be denied. The Second Circuit's decision and the guidelines it set forth in *Certain Real Property* make clear that it is most appropriate for this court to refuse to allow Mr. Ferrante to withdraw his earlier invocation of his Fifth Amendment privilege.

Mr. Ferrante's argument that *Certain Real Property* directs the district court to grant his request to testify is based on the statements made by the Second Circuit that a "district court should, *in general,* take a liberal view towards" a litigant's application to withdraw a previous invocation of his Fifth Amendment privilege, (*Certain Real Property,* 55 F.3d at 84) (emphasis added) and that "courts must take care not to punish valid

invocations of the privilege against self-incrimination and must try to accommodate those who would properly seek to claim the privilege." *Certain Real Property*, 55 F.3d at 80.

However, as the Second Circuit also stated in *Certain Real Property*, its instructions that district courts take a "liberal view" towards litigants' applications to testify after they had previously invoked their Fifth Amendment privilege "does not mean that withdrawal of the claim of privilege should be permitted carelessly." 55 F.3d at 84. Taking note of the fact that "an assertion of the Fifth Amendment is an effective way to hinder discovery and provides a convenient method for obstructing a proceeding," the Second Circuit instructed district courts to "pay particular attention to how and when the privilege was originally invoked," and to "be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties." *Id.* at 84. In setting forth guidelines for the district courts, the Second Circuit wrote that when "the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled … to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege." *Id.* at 85. The court concluded that "a trial court, to prevent prejudice to opposing parties and to control attempts to manipulate discovery, may in appropriate cases bar litigants from testifying concerning those matters about which they had previously improperly impeded discovery through an invocation of the Fifth Amendment." *Id.* at 87.

In *Certain Real Property*, where the defendant's decision to waive his Fifth Amendment rights came six months after an interrogatory in which he had last invoked his privilege, the Second Circuit relied on the defendant's "history of obstruction" to conclude that he was "simply using all available techniques—including the Fifth Amendment—to hinder and delay the Government's action," and upheld the district court's deci-

sion rejecting the petitioner's submission of testimony on matters regarding which he had previously asserted his Fifth Amendment privilege. *Certain Real Property* at 86. The court held that "the lengthy delay" that the petitioner "precipitated, and the timing of his attempt to withdraw his prior assertion of the Fifth Amendment" allowed the court to presume that the government had been prejudiced because of the manner in which he had utilized the privilege. *Id.*

The holding and guidelines set forth in *Certain Real Property* speak directly to this case. Mr. Ferrante's attempt to testify comes after more than two years of repeatedly invoking his Fifth Amendment rights in response to lengthy deposition questions posed to him by the government. His repeated assertion of the Fifth Amendment has greatly extended this litigation and has undoubtedly given him a "strategic advantage" over his opposing party. *See Certain Real Property* at 84. His decision to provide testimony now is nothing more than an attempt to use the Fifth Amendment "to abuse or obstruct the discovery process" and this court is therefore fully justified in refusing to allow his testimony on issues regarding which he has previously invoked his Fifth Amendment rights.

Because this court denies Mr. Ferrante's newly submitted testimony, there are no grounds to reconsider for withdrawing its order of October 1994 granting summary judgment against Mr. Ferrante.

### III. *Disgorgement of the Corporate Profits*

 The defendants argue that disgorgement against Mr. Ferrante is precluded by the recent decision of the Second Circuit in *United States v. Carson*, 52 F.3d 1173 (2d Cir.1995), petitioner for cert. filed, (U.S. Nov. 28, 1995) (No. 95–6929). In *Carson*, the Second Circuit vacated a district court's order of disgorgement against a union leader found to have violated RICO, and held that disgorgement as a remedy is limited to amounts intended solely to prevent and restrain future RICO violations. Because the vast majority of the money the district court ordered the defendant in *Carson* to disgorge was received by him long before the suit was brought, the Second Circuit found that the

money was acquired too far in the past for disgorgement to be part of an effort to prevent and restrain future conduct. *Carson* at 1182. Based on this reasoning, the defendants argue that disgorgement is not an available remedy in this case because the most recent alleged RICO misconduct took place in February 1985, a date more than ten years before the present motion was filed.

However, the situation at hand presents a sharp contrast to the facts in *Carson* and does fit within the guidelines drawn by the Second Circuit for a proper order of disgorgement in a civil RICO case. "Ordinarily, the disgorgement of gains ill-gotten long in the past will not serve the goal of 'prevent[ing] and restrain[ing]' future violations unless there is a finding that the gains are being used to fund or promote the illegal conduct, or constitute capital available for that purpose. The disgorgement of gains ill-gotten relatively recently is more easily justifiable on the basis of the same analysis." *Id.* at 1182.

In *Carson*, the defendant had been removed from his union position five years before the disgorgement was ordered, and had long been removed from any involvement in the activities on which his conviction was based. However, unlike Carson, the defendants in this case continue to be actively involved in the identical activities upon which this RICO suit is predicated. Because the corporate defendants in this case will continue to be involved in the Long Island carting industry even if the government's requested relief is granted, the monies these corporations gained illegally obviously constitute capital available for the purpose of funding or promoting illegal conduct. *See Carson* at 1182. Similarly, Mr. Ferrante, although enjoined from participation in the Long Island carting industry, has the capital obtained through his companies' illegal activities at his disposal to use in promoting or funding illegal conduct through family members, who now control the corporations in which he was enjoined from participating.

In addition, the government has asked for disgorgement for the "express purpose" of funding the costs of monitoring future carting industry activities of the defendants.

Plaintiff's Reply Memo. of Law at 35. Thus, the disgorgement in this case is clearly directed towards the prevention of future illegal conduct, and is therefore a permissible remedy for civil RICO violations under the limitations imposed by *Carson.*

### IV. *Separate Trials*

■ The defendants also request that the court sever the Unique defendants for separate trial pursuant to Federal Rule 42(b). In response, the government argues that a separate trial would result in a duplication of evidence and witnesses, presenting a waste of judicial resources and prejudice for the government.

Rule 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ..." Fed.R.Civ. Proc. 42(b). In this case, the defendants have not made any argument that severing the defendants here would further the court's convenience or avoid prejudice, nor that severing the defendants would be conducive to expedition and economy. Because the defendants have not made any argument that the conditions under which separate trials are granted under Rule 42(b) have been met, their motion to sever the defendants for separate trial, although mooted by this decision, is nevertheless denied.

### The Relief Requested

The defendants' objections to the government's request that they be directed to disgorge the proceeds derived from their participation in unlawful enterprises has already been addressed and rejected.

■ The defendants also object to the government's request that they be subject to the provisions of the Carting Industry Monitorship previously established by the Consent Judgment entered by this court on February 28, 1994.

18 U.S.C. § 1964 confers jurisdiction upon district courts to prevent and restrain violations of the RICO statute "by issuing appropriate orders." That broad grant of authority clearly implies the grant of broad discretion in determining what orders are

**902**

appropriate to prevent continuing violation of the statute. The direction to *"restrain violations"* also clearly implies the propriety of issuing injunctions which are the classic remedies for restraining prohibited conduct. The appointment of trustees, monitors, investigators or others with similar functions to oversee the continued activities of defendants to assure that future violations of the RICO statute will not be committed have been deemed to be "appropriate orders" within the contemplation and meaning of § 1964. *See, e.g., United States v. Local 560, International Brotherhood of Teamsters,* 581 F.Supp. 279 (D.N.J.1984), *aff'd,* 780 F.2d 267 (3d Cir.1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986); *United States v. Local 30, United Slate, Tile and Composition Roofers,* 686 F.Supp. 1139 (E.D.Pa.1988), *app. dismissed,* 871 F.2d 401 (3d Cir.), *cert. denied,* 493 U.S. 953, 110 S.Ct. 363, 107 L.Ed.2d 350 (1989); *United States v. Local 295, International Brotherhood of Teamsters,* 784 F.Supp. 15 (E.D.N.Y.1992).

Accordingly, the defendants are directed to disgorge the proceeds derived from their unlawful activities into the court-administered fund established for the purpose of monitoring the carting industry on Long Island pursuant to the consent judgment entered by this court dated February 28, 1994. The amount of those proceeds are to be determined in appropriate proceedings conducted for that purpose by Chief Magistrate–Judge Chrein to whom it is referred.

The defendants are, in addition, hereby directed to be subject to all of the provisions of the Carting Industry Monitorship previously established by this court by the consent judgment referred to above.

SO ORDERED.